UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BABCOCK POWER, INC., et al.                                                                    PLAINTIFFS

v.                                                                   CIVIL ACTION NO. 3:16-CV-789-CRS

THE STERLING GROUP, LP                                                                          DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, The Sterling Group, LP ("Sterling"), to dismiss the complaint for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Additionally, Sterling urges that certain of the plaintiffs' causes of action fail to state a claim upon which relief can be granted. As we conclude that personal jurisdiction over Sterling is lacking, we will not delve into the sufficiency of the other particular claims.

Babcock Power, Inc. and Vogt Power International, Inc. (collectively, "Babcock") filed suit against Stephen T. Kapsalis (the "Kapsalis suit") in July of 2013. Babcock amended its complaint to add Express Group Holdings, LLC as a defendant in November, 2014. Express Group Holdings, LLC ("Express") filed a petition in bankruptcy under Chapter 7 in the Northern District of Oklahoma on November 9, 2016. Babcock filed the above-captioned lawsuit (the "Sterling suit") against Sterling on December 9, 2016.

The Sterling suit seeks to impose liability on Sterling by alleging various affiliations between Sterling and Kapsalis/Express. Particularly, the complaint states:

> Personal jurisdiction over Sterling is proper based on this Court's inherent power to enforce orders it has issued even over non-parties…This Court also has personal jurisdiction over Sterling because various acts or omissions of Sterling

giving rise to this Complaint occurred within Kentucky and/or were directed at persons and/or property within Kentucky that resulted in harm.

DN 1, Complaint, ¶ 7.

Sterling has filed a properly-supported motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2). It has attached the sworn affidavits of Charles Kevin Garland, a Partner in Sterling, and Bradley Alan Staller, a Director with Sterling, who both aver that they reside in Houston Texas, as do all of the Sterling Partners. Sterling has no offices, employees or partners in Kentucky, owns no real property in Kentucky, conducts no business in Kentucky, and pays no taxes in Kentucky. Additionally, they aver that Sterling does not regularly do business or derive substantial revenue from goods used or consumed or services rendered in Kentucky.

Particularly, with regard to each affiant's affiliation with Express and Kapsalis, the affidavits establish the following:

(1) In 2010, Sterling's affiliate, Sterling Group Partners II, LP, and an Oklahoma limited liability company, CCCG, LLC, formed Sterling-Express Holdco Corp. ("Holdco"), a Delaware corporation which acquired a controlling 55.1% equity interest in Express.

(2) After Holdco acquired its interest in Express, both Garland and Staller became members of the board of directors of Express. They were both tasked with working with the Express management team to enhance Express' performance. Both had frequent contact from their respective offices in Houston and at Express' home office in Oklahoma. Garland has never acted or had any business dealings on behalf of Express while in Kentucky. Staller has been to Kentucky on behalf of Express only one time, attending a settlement conference in the Kapsalis case as Express' representative.

(3) The hiring of Kapsalis came about through the work of a Pennsylvania search firm, JM Search & Company, Inc., who was retained to provide candidates for the CEO position at Express. JM Search identified Kapsalis as a candidate. Kapsalis was interviewed by Garland and Staller on January 21, 2013 and February 24, 2013 in Houston. All meetings were conducted outside of business hours. Between January 21, 2013 and April 19, 2013 when the employment agreement was executed, emails between Kapsalis and Garland and Staller were sent to and received from Kapsalis personal email address.

> The employment agreement hiring Kapsalis as CEO of Express was signed by Garland in Houston on behalf of CCCG, LLC, the hiring entity.

(4) After April 19, 2013, email communications were sent to his address at Express.

(DNs 17-2; 23-3).

Under Kentucky law, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. [citation omitted]." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *V-Soft Consulting Group, Inc. v. Logic Corporation*, No. 3:16-cv-425-DJH. The plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen*, 935 F.2d at 1458, citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936).

In response, Babcock stands on its pleadings. No affidavits or other supportive evidence has been submitted. Thus, Sterling's properly supported allegations stand unrefuted, and the court will find personal jurisdiction lacking unless there are sufficient allegations in the complaint to establish personal jurisdiction which stand unrefuted by the sworn evidence provided by Sterling. For the reasons stated below, we find that the burden to establish personal jurisdiction has not been met by Babcock. Babcock has alleged all sorts of reprehensible conduct by Kapsalis in exhibiting disloyalty, stealing and disseminating trade secrets and attempting to divert business away from Babcock. Babcock alleges that Sterling was the recipient of confidential and trade secret information, and that Kapsalis was Sterling's agent and conducted Express business while in Kentucky. Upon careful review however, it is apparent that

the requirements for the exercise of personal jurisdiction over Sterling in Kentucky have not been shown, despite these allegations.

The only grounds argued for this court to exercise long-arm jurisdiction over Sterling fall under KRS 454.210(2)(a)(3) or (4) which permit

> the exercise of personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's…
>
> 3. Causing tortious injury by an act or omission in this Commonwealth; [or]
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth…

Sterling has established via affidavits that it does not regularly do or solicit business or derive substantial revenue from goods used or consumed or services rendered in Kentucky. Sterling's partners have not come to the Commonwealth and done business on behalf of Express, nor had any communications reaching into the Commonwealth beyond emails relating to Kapsalis' negotiation of employment with Express which were sent to Kapsalis' personal email address.

Babcock makes a number of arguments in an attempt to establish personal jurisdiction in the face of Sterling's evidence:  (1) Kapsalis acted as an agent of Sterling when he took Babcock's confidential and trade secret information and transferred the information to Sterling, both directly and through Express; (2) Kapsalis remained a Kentucky resident while acting as an agent for Sterling and numerous phone calls and electronic communications were made by members of Sterling into Kentucky to reach Kapsalis; (3) Sterling aided and abetted Kapsalis'

civil contempt when he used and disseminated confidential and proprietary information he took from Babcock.

With respect to Babcock's agency argument, it has offered nothing to it enable to reach past Express, Kapsalis' employer as of April 13, 2013, to impose tort liability on Sterling, an investor in the company. Babcock's mere recitation of the term "agent" does not make it so. In opposing a properly supported challenge to personal jurisdiction, Babcock must offer facts to back its argument.

In arguing that "Kapsalis conducted business on behalf of Express *and Sterling*…" Babcock cites to paragraph 26 of the complaint which states

> Sterling directed Kapsalis and Express' management team to strategies and specific initiatives identified for Express by Sterling. Typically Sterling would meet with the Express management team (which was comprised of Kapsalis, Express' CFO, the vice president of operations, the vice president of sales and the vice president of corporate development) once a month.

Both Garland and Staller acknowledged their involvement with the Express management team, from their locations in Houston and Oklahoma, with various initiatives to improve Express' performance. Nothing, however, has been offered by Babcock which even remotely suggests that this involvement created an agency relationship such that Kapsalis was acting as the agent of Sterling, rather than his employer, Express.

Similarly, nothing has been offered that supports the argument that Express was Sterling's agent. Babcock contends that the management fee paid to Sterling by Express "made Sterling an agent of Express and Kapsalis as well, given that Sterling was paid to oversee Express' operations." DN 32, p. 3. This argument is both vague and wholly unsupported by any authority.

There is simply no evidence that Kapsalis was an agent of Sterling. Therefore business of Express conducted by Kapsalis in Kentucky, if any,[1] cannot be attributed to Sterling.

Babcock's contention that Kapsalis was acting as Sterling's agent when he purportedly took Babcock's confidential and trade secret information and transferred it to Sterling is similarly unavailing. First, Kapsalis was not employed by Express until April 13, 2013, two days after both his departure from Babcock as well as two days after his alleged taking of confidential and trade secret documents.[2] The complaint claims that thereafter, Kapsalis provided to Garland, Staller, and others at Express various confidential documents belonging to Babcock. The allegations are, again, nonspecific, and suggest only that they were electronically transmitted. The complaint discusses the purported attempt to compete with Babcock on the so called "Wolf Data Center bid," utilizing the confidential information acquired by Kapsalis while working for Babcock. However, these allegations fail to establish *personal jurisdiction in Kentucky* over Sterling, as there is no evidence of any connection to the Commonwealth. There is no suggestion that such conduct gives rise to sufficient contacts with Kentucky under either (3) or (4) of the long-arm statute to warrant the exercise of personal jurisdiction over Sterling.

Finally, Babcock contends that Sterling "aided and abetted civil contempt" by knowingly encouraging Kapsalis to violate the preliminary injunction entered by Judge Heyburn in the Kapsalis suit. First, Babcock offers no authority to establish that aiding and abetting contempt of an injunction by a non-party in one suit can be asserted as a freestanding claim for relief in a

---

[1] There is a complete lack of specificity as to any "business" of Express conducted by Kapsalis in Kentucky. At best, there is a suggestion that he continued to maintain residence in Kentucky while employed by Express, and commuted between Express' Oklahoma headquarters and his home in Kentucky. It is suggested that there were email communications between Garland and Staller and Kapsalis after April 13, 2013 concerning Express business. However, Garland and Staller have averred that they sent email communications to Kapsalis' Express email address. The fact that Kapsalis may have accessed his company emails from his laptop while he and it were physically in Kentucky does not suggest that Sterling did business in Kentucky or reached into Kentucky and committed a tort. The argument makes little sense and is wholly unsupported both factually and legally by Babcock's filings.

[2] These allegations are, of course, the subject matter of the Kapsalis suit.

separate civil action against the non-party. In any event, the facts giving rise to this purported claim, if such claim were to exist, revolve around the "Wolf Data Center bid" where Express allegedly attempted to compete with Babcock for this piece of business. As such, there is no evidence concerning this matter which would warrant the exercise of personal jurisdiction over Sterling in Kentucky. Not only is there a lack of proof that Kapsalis and/or Express were the agents of Sterling, but further, there is no evidence offered of sufficient contacts with Kentucky to render the exercise of personal jurisdiction over Sterling reasonable.

Finally, Babcock seeks to leapfrog over the Kentucky contacts requirements of the long-arm statute by urging that the court's inherent authority to redress violations of its injunctions would allow the court to properly exercise personal jurisdiction over Sterling. Not in this case, as there is no injunction in force in this suit.

For these reasons, Babcock has failed to establish personal jurisdiction over Sterling. The action must therefore be dismissed without prejudice. A separate order will be entered this date in accordance with this opinion.

July 25, 2017

**Charles R. Simpson III, Senior Judge**
United States District Court

**IT IS SO ORDERED**.